ZIEMAN, Appellant, vs. THE KIECKHEFER ELEVATOR MANU-
FACTURING COMPANY, imp., Respondent.

*May 22 — June 20, 1895.*

*Negligence: Defective elevator: Personal injuries: Privity or contract
relation: Implied invitation: Act imminently dangerous to life.*

1. The defendant elevator company had placed a freight elevator in the building in which plaintiff was employed, under an agreement that it should not be accepted and paid for until in complete running order, that defects appearing in the work, material, or construction should be made good, and that in the meantime it should be operated by plaintiff's employer, under the supervision and control of the elevator company. While the elevator was so on trial it fell, by reason of a defect in its construction, and injured plaintiff, who had nothing to do with its operation but was working near the foot of the shaft. *Held*, that there was no privity or contract relation between plaintiff and the elevator company by reason of which it owed him any special duty, and that there was no implied invitation by said company to plaintiff to approach or be near the elevator shaft. The company was therefore not liable for plaintiff's injuries. *Bright v. Barnett & Record Co.* 88 Wis. 299, distinguished.

2. There being no claim that the elevator company acted recklessly or in bad faith, or that it had any actual notice of the defect, it was not liable on the ground that placing the elevator in the building was an act the natural and probable consequences of which would be imminently dangerous to the lives or persons of others.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This was an action against the *Kieckhefer Elevator Manu-facturing Company*, engaged in the manufacture and sale of passenger and freight elevators, and the Reliance Wire & Iron Works, engaged in the manufacture and sale of architectural wire and iron works in a certain four-story building in Milwaukee, Wis., to recover damages sustained by the plaintiff while engaged in the employ of the latter company as a brass and iron polisher, under the following circumstances:

The elevator company had made an agreement with the Reliance Wire & Iron Works to place in its building a first-class freight elevator, with all modern improvements and automatic brakes, all in good and complete running order; and it placed in said building, accordingly, an elevator operated by steam power, for the purposes of conveying freight to and from the various stories and basement of said building; but it was not to be accepted and paid for until in complete running order, and, in case any defects in the work, material, or construction should appear, the elevator company was to promptly make good and repair the same, and in the meantime, and until approved, the Reliance Wire & Iron Works was to hold and operate the elevator for its business, under the supervision and control of the elevator company. While the elevator was so on trial by and in possession of the defendant the Reliance Wire & Iron Works, unaccepted and held for the elevator company, and on December 6, 1892, the plaintiff was engaged in the course of his said employment in removing machinery from the basement of said building, at a point two or three feet from the elevator shaft, and the elevator was at the fourth floor of the building. One of the employees of the defendant Reliance Wire & Iron Works, who was in one of the stories below the fourth, operated the cable connected with the bolts which caused the elevator to ascend or descend as desired, and the cable which unwinds when the elevator descends became un-

wound, but the elevator, instead of descending, was held fast in the fourth floor, by reason of the coupling iron on the regulating cable being caught on the frame of the elevator shaft, causing an obstruction to the downward passage of the elevator, and the elevator platform was also too large for the shaft. When the unwinding cable had become almost entirely unwound, the obstruction to the elevator gave way, and it fell down the shaft the entire four stories, to the basement; and by its fall the unwound cable was hurled with great force against and around the plaintiff's right leg; and, the cable immediately slacking up, he was hurled up against the ceiling of the basement between the elevator gearing, when the cable was broken, and the plaintiff dropped senseless to the base of the elevator shaft; and thereupon said elevator fell on him, whereby he sustained the injuries specified.

It was alleged that the elevator at the time was not a reasonably safe appliance, and that it was defectively and improperly constructed in certain specified respects, which were the sole cause of the plaintiff's injuries; that they were within the knowledge of the defendants, but unknown to the plaintiff; that his injuries were solely caused by the negligence of the elevator company in improperly constructing said elevator as aforesaid, and in delivering it to and permitting it to be used by the defendant Reliance Wire & Iron Works before it was reasonably safe, and by the Reliance Wire & Iron Works using and operating it while it was not a reasonably safe appliance and before it had been approved as being in accordance with its agreement with the elevator company.

To the plaintiff's complaint containing the foregoing statements and allegations, the defendant the *Kieckhefer Elevator Manufacturing Company* demurred, on the ground that it did not state facts sufficient to constitute a cause of action; and from an order sustaining such demurrer the plaintiff appealed.

For the appellant there was a brief by *Christian Doerfler*, attorney, and *George E. Sutherland*, of counsel, and oral argument by *Mr. Sutherland*. They contended, *inter alia*, that the case rests on the principle of implied invitation. The respondent induced the employees of the Reliance Wire & Iron Works to operate the elevator to the injury of the plaintiff, occasioned by its negligence in the faulty construction of the elevator, and it is therefore liable for all damages sustained by reason thereof. *Bright v. Barnett & R. Co.* 88 Wis. 299; *Mulchey v. Methodist R. Soc.* 125 Mass. 487; *Gilbert v. Nagle*, 118 id. 278; *Elliott v. Pray*, 10 Allen, 378; *Pickard v. Smith*, 10 C. B. (N. S.), 470; *Indermauer v. Dames*, L. R. 1 C. P. 274; *Holmes v. N. E. R. Co.* L. R. 4 Exch. 254; *Coughtry v. Globe W. Co.* 56 N. Y. 124. Such liability rests upon the duty which the law imposes on every one to avoid acts imminently dangerous to the lives of others. The duty of care under such circumstances is not a contract duty, but a duty imposed by the common law, and the contract is only important as it evidences the degree of care which the respondent was bound to observe. *Bright v. Barnett & R. Co.* 88 Wis. 299; *Devlin v. Smith*, 89 N. Y. 470; *Hayes v. P. & R. C. & I. Co.* 150 Mass. 457; *Elliott v. Hall*, 15 Q. B. Div. 315; *Bennett v. Railroad Co.* 102 U. S. 577; *Railroad Co. v. Hanning*, 15 Wall. 649; Cooley, Torts, 605, 607; Whart. Neg. §§ 349–352; *Corby v. Hill*, 4 C. B. (N. S.), 562; *Powers v. Harlow*, 53 Mich. 507; *Necker v. Harvey*, 49 id. 517.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

PINNEY, J. 1. By the contract between the elevator company and the Reliance Wire & Iron Works, the elevator was to be held and operated by the latter upon trial, and not to be accepted and paid for until in complete running order;

and defects appearing in work, material, or construction were to be made good and repaired by the elevator company. In the meantime, that is to say, while the elevator was on trial and until the elevator company performed its contract, the Reliance Wire & Iron Works was to hold and operate it for the purposes of its business, under the supervision and control of the elevator company. This supervision and control was for a limited purpose, extended only to such acts as would enable it to perform its part of the contract, and had, we think, nothing to do with the business relations of the Reliance Wire & Iron Works with its servants and employees. The contract and its performance on the part of the elevator company did not create any privity or contract relations between it and the plaintiff, as an employee of the Reliance Wire & Iron Works, who had nothing to do with the operation or use of the elevator and was not attempting to operate or use it at the time of the accident. It is impossible to say, we think, that the elevator company stood in any relation to the plaintiff by reason of which it owed him any special duty, and equally so to hold that it had invited him, impliedly or otherwise, to approach the elevator or to come and be at work near the foot of the elevator shaft, in respect to a matter having no relation whatever to setting up, perfecting, or operating the elevator while it was on trial. The defendant was acting in the proper conduct of its lawful calling in setting up and putting in proper use one of the machines it had manufactured in the course of its business, and it was under no duty or obligation to furnish a safe place for the servants or employees of the Reliance Wire & Iron Works to work outside of the elevator, or a safe way of passage through the building at or near it. There is no claim that the defendant obstructed the place where the plaintiff or any servants or employees of the Reliance Wire & Iron Works worked, or any way they were accustomed to use in passing into or

Zieman vs. The Kieckhefer Elevator Mfg. Co.

through the building. The duties devolved on the defendant by its contract related to matters with which it does not appear that the plaintiff had any concern or was in any manner connected.

We think the case is clearly distinguishable from *Crane Elevator Co. v. Lippert*, 11 C. C. A. 521, 63 Fed. Rep. 942; *Bennett v. Railroad Co.* 102 U. S. 577; *Bright v. Barnett & Record Co.* 88 Wis. 299, and other cases cited by the appellant. There was no privity or contract relation between the plaintiff and defendant, and there was no allurement or implied invitation on the part of the latter to cause the plaintiff to approach, or · be near the foot of the elevator shaft, or even in the building.

If this action could be maintained upon the allegations of negligent and improper construction of the elevator, it would follow that any one actually using it, and receiving injury in consequence,— a much stronger case than the present,— might maintain an action against the manufacturer. This would be to introduce a rule which, we think, is not sustained by authority, and might lead to serious consequences. The case falls, we think, within the rules acted on in *Winterbottom v. Wright*, 10 Mees. & W. 109; *Collis v. Selden*, L. R. 3 C. P. 498; and *Heaven v. Pender*, 11 Q. B. Div. 514. In *Collis v. Selden* the defendant had negligently and improperly hung a chandelier in a public house, knowing that the plaintiff and others were likely to be therein and under the chandelier, and, unless properly hung, it was likely to fall upon and injure them; and, the plaintiff being lawfully in the public house, the chandelier fell upon and injured him; and it was held that the declaration was bad, in that it did not disclose any duty by the defendant towards the plaintiff for the breach of which an action could be maintained. This case was referred to in *Elliott v. Hall*, 15 Q. B. Div. 320, and it was said by Grove, J., that "the case was really decided on the ground of uncertainty of the declaration as

to the *relation* between the plaintiff and defendant." And
the case of *Elliott v. Hall, supra,* relied on by the plaintiff
here, went upon the ground that in that case "a duty arose
on the part of the defendant towards the plaintiff," because
the defendants, the vendors of coals, forwarded them to the
purchasers in trucks, and the goods were necessarily to be
unloaded from such trucks by the purchasers' servants; that
there was "a duty on the part of the vendors towards those
persons who necessarily would have *to unload or otherwise
deal with the goods* to see that the truck or other means of
conveyance was in good condition, so as not to be danger-
ous to such persons." The plaintiff, a servant of the pur-
chasers, was injured by reason of a defective truck, in
unloading it, and which had been sent by the vendors to the
purchasers, loaded with coal. That case is clearly distin-
guishable from the present one, and falls far short of sus-
taining it. Here the plaintiff was not riding in or using the
elevator, and had in fact nothing whatever to do with it,
and there is therefore an entire absence of the duty held to
have existed in *Elliott v. Hall.* The case of *Hayes v. P. &
R. C. & I. Co.* 150 Mass. 458, is, in substance, the same, and
rests upon a duty arising from invitation. The following
cases also show, we think, that the action cannot be main-
tained: *Longmeid v. Holliday,* 6 Eng. L. & Eq. 562; *Losee
v. Clute,* 51 N. Y. 494; *Necker v. Harvey,* 49 Mich. 517;
*Loop v. Litchfield,* 42 N. Y. 351.

2. It was contended that the defendant was liable as for
a breach of duty imposed upon it at common law to avoid
acts the natural and probable consequences of which would
be imminently dangerous to the lives or persons of others.
Elevators such as this are in such universal use that we can-
not say that one placed in position and in use is *per se* a
machine, device, or appliance imminently dangerous to the
lives of others, or that serious injury to any person using,
operating, or approaching or being near one would be a

natural or probable consequence of such use. A steam boiler, by reason of defects in material or workmanship, may explode, causing serious injury or loss of life; but it cannot be maintained that one who had manufactured and sold such boiler, in the absence of actual knowledge of such defects or of fraud, would be liable for the consequences of such explosion. *Losee v. Clute*, 51 N. Y. 494. And we think the same rule applicable to the present case. There is no claim that the defendant had acted recklessly or in bad faith, or that it had any notice in fact that the elevator was defective and that the particular injury to the plaintiff or injury to any one would be the natural and probable consequence of its use and operation. The allegations of the complaint are not sufficient to show that there was any breach by the defendant of the common-law duty relied on.

For these reasons, we think that the demurrer was properly sustained.

*By the Court.*— The order of the superior court is affirmed.