JACOB RUDOMEN *vs.* M. GREEN.

Suffolk. October 8, 1937. — February 28, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence, In making repairs, Contributory. Landlord and Tenant, Landlord's liability to tenant, Repairs.*

Evidence that the landlord of an apartment let to a tenant at will fixed a leak in the apartment which was causing damage in another apartment and then told the tenant that he had finished his work and that "everything was O. K.," but left a board with protruding nails on the floor upon which the tenant stepped and thereby was injured, warranted a finding that the landlord was negligent and did not require a finding that the tenant was guilty of contributory negligence, and warranted recovery by the tenant from the landlord in tort.

TORT. Writ in the Superior Court dated June 13, 1933.

A verdict for the defendant was ordered by *M. Morton*, J. The plaintiff alleged exceptions.

*I. Bernstein*, for the plaintiff.

No argument nor brief for the defendant.

RUGG, C.J. This is an action of tort whereby the plaintiff seeks to recover compensation for personal injuries alleged to have been caused by the negligence of the defendant. The defendant pleaded in his answer a general denial and that the injuries resulted from the contributory negligence of the plaintiff. There was evidence tending to show these facts: The plaintiff became a tenant at will of the defendant, occupying an apartment of three rooms on the top floor of an apartment house owned by the defendant. At about fifteen minutes after ten o'clock in the forenoon of

a February day in 1933, while the plaintiff was in bed because of a mild cold and alone in his apartment, the defendant was admitted with another man. The defendant said that there was a leak coming from the apartment of the plaintiff into the apartment below; that they had come to locate it; that they thought it was in a cabinet and in order to find it they must rip out the cabinet. The cabinet, made of wood, was about three feet high, two and one half feet wide, with three drawers; it was located in the kitchen to the left of the sink, standing on the floor and nailed against the wall. The defendant and the other man, as soon as admitted to the apartment of the plaintiff, went to work in the kitchen. The plaintiff returned to bed in the bedroom, which was about ten feet away from the kitchen off the common inner hallway. The bedroom door was open. Before the defendant and his man were admitted to the apartment the cabinet with its drawers was in perfect condition. There was nothing lying about the kitchen floor and everything was in order. The floor was of ordinary hard wood with no covering. The defendant and his man worked in the kitchen and no one else was there. They worked about two hours to complete the job and then said that "they were finished and everything was O.K." After they had left the plaintiff went to the kitchen. The plaintiff testified: "As he was making the first step into the kitchen, about one-half to one foot beyond the threshold leading from the inner hallway to the kitchen, he stepped upon a nail protruding from a stick of wood about two and a half feet long and about a half inch square, resting on the kitchen floor with nails upward, which had been ripped out of the kitchen cabinet, with the part on which he had stepped . . . visible and the other part concealed by the kitchen wall. As he was walking into the kitchen, he could see only a short distance in front of him, but he could not see very much to the left or right unless he actually stepped into the kitchen. As he stepped on the nail with his right foot, the nail stuck into the slipper that he was wearing, and it threw him forward into the kitchen against the three cabi-

net drawers that were piled up one on top of the other on the kitchen floor, striking his groin against that, and as he was falling, he struck his head and shoulders against the rear door located in the kitchen, opposite to the entrance door to the kitchen, receiving substantial injuries. The part of the stick that was facing upward and from which the nails were protruding was unpainted hard wood and the other side was painted . . . the same color as the kitchen cabinet. On the next rent day the defendant said to the plaintiff that it was supposed to have been cleaned up and the way he left it he figured the janitor was going to come up and clean everything up there after they were through." At the close of the direct examination of the plaintiff the trial judge granted a written motion by the defendant for a directed verdict in his favor. The exceptions of the plaintiff bring the case here.

The evidence warranted a finding that the defendant, the owner of the building and the landlord of the plaintiff, having discovered a defect in the tenement occupied by the plaintiff, undertook to put it in repair with his own hands and the assistance of a helper, and that on leaving the apartment he said to the plaintiff that the work was completed and everything was all right, whereas, in truth, material was carelessly placed on the floor which rendered it dangerous for the tenant to step into the room. The finding was permissible that the defendant as landlord undertook voluntarily to make repairs and that, when they were finished, he notified the tenant, invited him to make use of the tenement, and assured him that he might do so with safety. In these circumstances, if the tenement was unsafe by reason of want of ordinary care and skill on the part of the defendant, and the tenant sustained personal injuries thereby, he may recover compensation from the defendant. That principle is the established law. *Gill* v. *Middleton*, 105 Mass. 477, 479. *Riley* v. *Lissner*, 160 Mass. 330. *Buldra* v. *Henin*, 212 Mass. 275, 278. *Thomas* v. *Lane*, 221 Mass. 447, 448, 449. *Marks* v. *Nambil Realty Co. Inc.* 245 N. Y. 256, 258. *Kirshenbaum* v. *Gen-*

*eral Outdoor Advertising Co. Inc.* 258 N. Y. 489, 496. That principle is applicable to the evidence in the case at bar. It entitled the plaintiff to go to the jury.

The burden of proving contributory negligence on the part of the plaintiff rested upon the defendant. The plaintiff was presumed to be in the exercise of due care. G. L. (Ter. Ed.) c. 231, § 85. It could not rightly have been ruled as matter of law that the plaintiff contributed to his injury by his negligence.

There was error in directing a verdict in favor of the defendant. The case ought to have been submitted to the jury.

*Exceptions sustained.*